***NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICROBILT CORPORATION,<br><br>             Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON and CFC UNDERWRITING LIMITED,<br><br>             Defendants. | Civil Action No. 20-12734 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Before the Court is a motion to dismiss Counts I and III of Plaintiff, MicroBilt Corporation's ("Plaintiff" or "MicroBilt") Amended Complaint filed by Defendants, Certain Underwriters at Lloyd's, London ("Underwriters") and CFC Underwriting Limited ("CFC") (collectively, "Defendants") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 22, Mot. to Dismiss). For the reasons that follow, Defendants' motion to dismiss is **DENIED** without prejudice.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For the purpose of this motion, the Court takes as true all allegations of the Amended Complaint. Plaintiff purchased a Management Liability Policy from Defendants, effective November 7, 2017, under policy number DOGO2408208 ("Policy"). (ECF No. 19, Am. Compl. at ¶¶ 11-13). In addition to Defendants' agreement to pay certain claims against Plaintiff

covered by the Policy, Plaintiff also alleges that Defendants were responsible for paying "costs and expenses incurred" by MicroBilt in connection with the defense of those claims. *Id.* at ¶ 14.

      A.      <u>The 2018 Claims and Defense Costs</u>

In 2018, Plaintiff received certain claims ("2018 Claims") against it, which according to Plaintiff, Defendants were responsible for paying under the Policy. *Id.* at ¶¶ 15-17. Plaintiff alleges, however, that although timely invoices of outstanding counsel fees incurred in defense of the 2018 Claims were provided to Defendants, Defendants failed to make payments under the Policy within a reasonable time. *Id.* at ¶ 18. Specifically, Plaintiff alleges that Defendants first paid the counsel fees on August 30, 2019, ten months after MicroBilt provided the invoices. Thereafter, Plaintiff alleges that Defendants made additional payments on January 9, 2020 and March 27, 2020. *Id.* at ¶¶ 18-20. Plaintiff asserts that due to Defendants' failure to timely pay the counsel fees related to the 2018 Claims, Plaintiff's counsel, at the time, ceased representation of Plaintiff, resulting in Plaintiff "incur[ring] additional costs, fees, and expenses" associated with retaining new counsel. *Id.* at ¶¶ 22-24.

      B.      <u>2019 Claims and Defense Costs</u>

In 2019, Plaintiff received additional claims against it, which it also alleges were covered under the Policy ("2019 Claims"). *Id.* at ¶ 25. Plaintiff alleges that like the 2018 Claims, it provided notice to Defendants of the 2019 Claims on September 20, 2019, and that it continued to send the invoices for the attorneys' fees incurred in defense of the 2019 Claims to Defendants for the next three months. *Id.* at ¶¶ 26-27. Indeed, Plaintiff alleges that on three separate occasions, *i.e.*, November 11, 2019, December 2, 2019, and January 9, 2020, it requested a response from Defendants as to the status of reimbursement for legal fees incurred in connection with the 2019 Claims. *Id.* at ¶ 28. According to Plaintiff, on January 10, 2020, Defendants

acknowledged their duty to pay MicroBilt's defense costs related to the 2019 Claims, but at the time Plaintiff commenced this action, Defendants had not paid MicroBilt's defense costs related to the 2019 Claims.  *Id.* at ¶¶ 29-30.

    C.    <u>Procedural History</u>

On September 15, 2020, Plaintiff filed suit against Defendants, asserting a claim for breach of contract (Count I) and breach of the covenant of good faith and fair dealing (Count II). (ECF No. 1, Compl.).  On April 6, 2021, Plaintiff filed an Amended Complaint, adding two additional claims against CFC for breach of contract (Count III) and negligence (Count IV). (*See*, *e.g.*, Am. Compl.).  Specifically, as it relates to the breach of contract claims, Count I of the Amended Complaint asserts a breach of contract claim against Underwriters and CFC, alleging that the Policy required Defendants to timely reimburse Plaintiff for legal expenses in connection with the 2018 and 2019 Claims, and that Defendants' failure to do so "result[ed] in a breach of the insurance contract."  *Id.* at ¶¶ 43-48.  Count III of the Amended Complaint, on the other hand, asserts a separate breach of contract claim only against CFC, as Underwriters' agent and/or claims handler with respect to the Policy.  In Count III, Plaintiff alleges that CFC breached its obligations to Plaintiff by failing to timely process the claims and pay Plaintiff the insurance to which it was entitled.  *Id.* at ¶¶ 55 and 61.

On April 20, 2021, Defendants filed the instant motion to dismiss Plaintiff's breach of contract claims in Counts I and III.  (ECF No. 22, Mot. to Dismiss).

## II.    <u>LEGAL STANDARD</u>

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under

3

any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of trust. *Id.* Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III.   DISCUSSION

On this motion, Defendants seek dismissal of Counts I and III of Plaintiff's Amended Complaint.  (ECF No. 22, Mot. to Dismiss).  Defendants argue that dismissal of Counts I and III

is proper because all benefits under the Policy have been paid to Plaintiff as of the filing of Plaintiff's Amended Complaint and that Plaintiff has failed to identify any express provision of the Policy that Defendants have breached. (Def. Moving Br., 5-7). In response, Plaintiff concedes that Defendants did in fact render payment of all counsel fees related to the 2018 and 2019 Claims after Plaintiff commenced this suit; however, it argues that Defendants' "unjustified delay in processing the insured claims," resulted in additional costs. (Pl. Opp. Br., 7). Specifically, Plaintiff contends that the length of delay in reimbursement was unreasonable, and that the delay constitutes a breach of the Policy.

A claim for breach of contract in New Jersey requires: (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. *Frederico v. Home Depot,* 507 F.3d 188, 203 (3d Cir. 2007). Here, the parties do not dispute that the Policy constitutes a valid and enforceable contract. Rather, the issue is whether Defendants' alleged unreasonable delay in reimbursing Plaintiff for attorneys' fees and other legal expenses incurred in defense of claims covered under the Policy constitutes a breach of the contractual terms of the Policy.

At the outset, although I agree with Defendants' position that the Amended Complaint fails to identify the precise contractual provision that Defendants purportedly breached in failing to timely reimburse Plaintiff's legal expenses, this appears to be because the Policy does not contain an express timing requirement as it relates to reimbursement of Plaintiff's legal expenses. Rather, the Policy, which Defendants attach as an exhibit to their motion to dismiss,[1] provides the following with respect to payment of claims:

---

[1] When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents, such as the Policy, that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a

> **Agreement to pay claims**
>
> We have the right and duty to take control of and conduct in your name the investigation, settlement or defense of any claim. We shall also pay on your behalf costs and expenses incurred with the prior written consent of the Claims Managers (which shall not be unreasonably withheld) provided that we shall not:
>
> a) pay for the costs and expenses of any part of a claim that is not covered by this Policy except as provided for in the Allocation CONDITION; or
>
> b) incur any costs and expenses in the defense of any claim unless there is a reasonable prospect of success, taking into account the commercial considerations of the costs of defense.

(ECF No. 22-1, Exhibit A, Conditions, ¶ 4.)[2]

Ordinarily, where no time limit is set forth in the contract for its completion, a reasonable time limit is implied. *Becker v. Sunrise at Elkridge*, 226 N.J. Super. 119, 129 (App. Div. 1988), *certif. den.* 113 N.J. 356 (1988) ("It is well-settled that where no time is fixed for the performance of a contract, by implication a reasonable time was intended."); *River Development Corp. v. Liberty Corp.*, 45 N.J. Super. 445, 464 (Ch. Div. 1957), *aff'd* 51 N.J. Super. 447 (App. Div. 1958), *aff'd* 29 N.J. 239 (1959); *see also Glazer v. Klughaupt*, 116 N.J.L. 507, 510 (1936) ("What constitutes 'reasonable time' is generally a question peculiarly within the province of a jury unless, upon all the evidence, only one inference may fairly be drawn."). However, case law also suggests that where performance under the contract is the payment of money, as is the case here, "the court is *not* to supply a reasonable time for performance." *Passero v. N. Jersey Country Club, Inc.*, No. A-3459-12, 2014 WL 2480167, at *6 (App. Div. June 4, 2014). Rather, "where no time for payment is expressed in a promissory note or other instrument for the

---

defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

[2] The Policy provides that "costs and expenses" are defined to include, in relevant part, legal and professional expenses. Am. Compl. at ¶ 8.

payment of money, the law adjudges that the parties meant that the money should be payable immediately." *City of Camden v. S. Jersey Port Comm'n*, 2 N.J. Super. 278, 299 (Ch. Div. 1949) (emphasis added) (citing *Agens v. Agens*, 50 N.J. Eq. 566 (Ch. 1892)), *aff'd and modified on other grounds*, 4 N.J. 357 (1950).

Here, regardless of whether payment was required immediately or within a reasonable amount of time, the Amended Complaint sufficiently pleads a cause of action for breach of contract based upon failure to make timely payment. The Amended Complaint alleges that MicroBilt provided timely notice of the 2018 Claims to Defendants by providing sufficient notice to CFC. Defendants acknowledged their duty under the Policy to reimburse legal fees and expenses, and despite their acknowledgement, Defendants failed to fully pay MicroBilt's counsel fees in connection with the 2018 fees for at least sixteen months. Specifically, Plaintiff alleges that Defendants first made partial payment on August 30, 2019—ten months after MicroBilt notified Defendants of the 2018 Claims and provided invoices for MicroBilt's counsel fees; and that Defendants did not make additional payments until January 9, 2020 and March 27, 2020. According to Plaintiff, this approximately sixteen-month delay was unreasonable and required MicroBilt to locate and retain new counsel, causing additional costs, fees, and expenses. As to the 2019 Claims, Plaintiff alleges that it notified Defendants of the claims on September 20, 2019, sent monthly invoices from its attorney to Defendants, and, like the 2018 Claims, Defendants failed to make timely payment. Specifically, Plaintiff alleges that despite acknowledging their duty to reimburse MicroBilt's legal expenses for the 2019 Claims on January 10, 2020, Plaintiff still had not received payment at the time this action was filed on September 15, 2020—more than eight months after Defendants' acknowledgment. Put simply, regardless of whether Defendants' reimbursement for Plaintiff's legal expenses was required

7

within a reasonable amount of time or immediately upon notice of the claims and attorney invoices, these allegations are sufficient to at least sustain a claim for breach of contract. Moreover, the mere fact that Defendants have reimbursed Plaintiff's legal expenses, in full, does not extinguish Plaintiff's claim, since Plaintiff claims damages resulting from the delay in payment. The Court construes Defendants' purported breach of the Policy as arising from their late payment, not their refusal to pay.

That said, however, the Court notes that having examined these circumstances in the context of insurance coverage disputes, courts have generally found that an insurer's failure to timely furnish payment in accordance with the terms of an insurance policy, creates a cause of action for breach of the implied covenant of good faith and fair dealing, not breach of contract. *Polito v. Continental Casualty Co.*, 689 F.2d 457, 461 (3d Cir. 1982); *Enright v. Farm Fam. Cas. Ins. Co.*, No. 03-4850, 2005 WL 3588485, at *9 (D.N.J. Dec. 29, 2005). Indeed, in *Pickett v. Lloyd's*, 131 N.J. 457 (1993), a case relied on by Plaintiff in opposition to Defendants' motion to dismiss, an insured brought an action against the carrier for breach of the duty of good faith and fair dealing arising out of its failure to promptly pay the insured's claim. To be certain, the bad faith cause of action announced by the New Jersey Supreme Court rested upon the <u>implied covenant of good faith and fair dealing</u>, a duty, which the Court noted, is "to be implied in every contract." *Id.* at 466; *see also Ross v. Lowitz*, 222 N.J. 494, 513 (2015) (confirming that the *Pickett* Court recognized an insurance company's duty of good faith and fair dealing to its insured in the processing of insurance claims). However, because the parties' briefing does not adequately address whether any potential remedy for Plaintiff's alleged damages, taken in the insurance context, lies more appropriately under the implied covenant of good faith and fair

dealing, such that Plaintiff's claims for breach of contract are duplicative, the Court denies Defendants' motion to dismiss without prejudice.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss Counts I and III is **DENIED** without prejudice.  Should Defendants seek to file a renewed motion to dismiss, based on the guidance provided in this Opinion, they are directed to do so within thirty days of the date of the accompanying Order.

Dated: November 10, 2021                                                  /s/ Freda L. Wolfson
                                                                                                      Freda L. Wolfson
                                                                                                      U.S. Chief District Judge